ORIGINAL

AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24 MAG . 449

UNITED STATES OF AMERICA

v.

ALEXIS NIEVES,

Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 666 and 1951

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

DAVID EIDAM, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Labor – Office of Inspector General ("DOL-OIG"), and charges as follows:

## COUNT ONE
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

1.     From at least in or about February 2019 through at least in or about April 2021, in the Southern District of New York and elsewhere, ALEXIS NIEVES, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2019 through 2021, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, NIEVES solicited and accepted a total of at least approximately $4,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $49,000.

(Title 18, United States Code, Section 666(a)(1)(B).)

## COUNT TWO
### (Extortion Under Color of Official Right)

2.     From at least in or about February 2019 through at least in or about April 2021, in the Southern District of New York and elsewhere, ALEXIS NIEVES, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, NIEVES, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due NIEVES or his office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

3.      I am a Special Agent with DOL-OIG, and I have been personally involved in the investigation of this matter.  I have been employed by DOL-OIG since 2017.  I and other members of the investigative team, which includes agents from DOL-OIG, the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for NYCHA ("NYCHA-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

4.      This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation.  Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

5.      As set forth in more detail below, there is probable cause to believe that ALEXIS NIEVES, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at a NYCHA development, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

6.      Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

a.  NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

b.  NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD").  In each year from at least 2019 through 2021, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

c.  NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition."  As such, goods and services must

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

      d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

      e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

      f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may *not*: . . .

> • Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.
>
> • Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .
>
> • Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .
>
> • Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

employees or in connection with the actions or duties of any other employee of NYCHA.

• Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

• Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## NIEVES'S EMPLOYMENT BY NYCHA

7. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of ALEXIS NIEVES, the defendant:

a. From at least in or about January 2019 through at least in or about February 2022, NIEVES was employed as a superintendent at Garvey-Prospect Plaza, a jointly-managed NYCHA consolidation consisting of Marcus Garvey Apartments ("Marcus Garvey") and Prospect Plaza, located in Brooklyn, New York.

## NIEVES'S SOLICITATION AND RECEIPT OF PAYMENTS

8. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-2")[2] who has performed work at NYCHA's Marcus Garvey development, among other developments,[3] I have learned the following, in substance and in part:

a. Since at least in or about 2018, CW-2 performed contracting work for NYCHA with several contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-2 began performing no-bid purchase order work at Marcus Garvey in or about 2018. CW-2 was awarded at least approximately 12 no-bid contracts at Marcus Garvey from in or about February 2019 through in or about December 2020 (all of which are listed in NYCHA records as "closed," indicating a NYCHA employee approved the completed work, and

[2] The cooperating witnesses referenced in this Complaint are designated as "CW-2" and "CW-13" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[3] CW-2 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interviews. Based on my review of immigration records, I have learned that, based on matching biometric information, CW-2 appears to have previously applied for immigration benefits under a different name, which application was denied.

4

eleven of which list ALEXIS NIEVES, the defendant, as the "receiver" for the purchase order), during the time in which NIEVES served as a superintendent at that NYCHA facility. During that time, CW-2 paid NIEVES approximately $400 to $500 in cash for each of approximately three to five no-bid contracts.

        c.    CW-2 understood, based on CW-2's interactions with NIEVES and with other NYCHA employees who similarly required payments for work, that if CW-2 did not make payments to NIEVES, NIEVES would make it difficult for CW-2 to receive additional no-bid contracts or receive payment for contracts that CW-2 had already fulfilled.

        d.    On or about November 7, 2023, CW-2 reviewed photobooks containing a photograph of NIEVES among photographs of dozens of other individuals. CW-2 identified the photograph of NIEVES as "Alex" at Marcus Garvey, the NYCHA employee to whom CW-2 had made payments in exchange for no-bid contracts from NYCHA.[4]

        e.    CW-2 has a contact saved in CW-2's cellphone with the name "Alx S Super" and a particular phone number ending in -9745 (the "9745 Number"). Based on NYCHA Human Resources records which I have reviewed, I have confirmed that the 9745 Number is the personal phone number listed for NIEVES.

        9.    Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-13"),[5] who has performed work at NYCHA's Marcus Garvey development, among other developments, I have learned the following, in substance and in part:

        a.    Since at least in or about 2021, CW-13 performed contracting work for NYCHA with certain contracting companies that purchased materials from various retailers, including retailers that sold items in interstate commerce.

        b.    CW-13 began performing no-bid purchase order work at Marcus Garvey in or about February 2021. CW-13 was awarded at least approximately seven no-bid contracts at Marcus Garvey from in or about February 2021 through in or about April 2021 (all of which are listed in NYCHA records as "closed," and all of which list ALEXIS NIEVES, the defendant, as the "receiver"), during the time in which NIEVES served as a superintendent at that NYCHA facility.[6] During that time, CW-13 paid NIEVES approximately 10% of the value of the contract

---

[4] During previous interviews, prior to reviewing any photograph of NIEVES, CW-2 had not recalled paying any NYCHA employees at Marcus Garvey. Reviewing the photograph of NIEVES appears to have refreshed CW-2's recollection.

[5] CW-13 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interview. CW-13 has never worked at any of the contracting companies where CW-2 worked. Both CW-2 and CW-13 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-2 and CW-13 know each other.

[6] NYCHA records show that NIEVES's identification badge "punched" in and out of Marcus Garvey and/or Prospect Plaza (which, as noted, were both part of the same consolidation and

for approximately all of the no-bid contracts CW-13 was awarded at Marcus Garvey. Each no-bid contract was worth approximately $5,000, and CW-13 therefore paid NIEVES approximately $500 in cash per contract.

      c.    CW-13 understood, based on his interactions with NIEVES and with other NYCHA employees who similarly required payments for work, that if CW-13 did not make payments to NIEVES, CW-13 would not be awarded additional no-bid contracts for work at Marcus Garvey.

      d.    CW-13 has a contact saved in CW-13's cellphone with the name "Alexis Super Garvy" and a particular phone number ending in -9210 (the "9210 Number"). Based on NYCHA records which I have reviewed, I have confirmed that the 9210 Number is the NYCHA cellphone number used by NIEVES.

      e.    CW-13 provided certain emails between CW-13 and NIEVES's NYCHA email address relating to proposals for new contracts and statements of services for completed contracts by CW-13 at Marcus Garvey, including for the no-bid contracts for which CW-13 paid NIEVES.[7]

---

shared management) between in or about February 2021 through in or about April 2021, during the time of CW-13's no-bid contracts.

[7] On or about November 20, 2023, CW-13 reviewed photobooks containing a photograph of NIEVES among photographs of dozens of other individuals, but did not identify the photograph of NIEVES. CW-13 did identify two other photographs, which were not of NIEVES, as photographs that looked similar to NIEVES, but CW-13 was not sure about either photograph being NIEVES. (From my review of the photographs, I believe the individuals in these photographs – neither of whom was ever employed at Marcus Garvey – look similar to NIEVES.) CW-13 stated before reviewing the photobooks that it has been a long time since CW-13 had interacted with the NYCHA employees whom CW-13 paid, and that CW-13 was not sure CW-13 would recognize any photographs.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ALEXIS NIEVES, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

DAVID EIDAM
Special Agent
U.S. Department of Labor
Office of Inspector General

Sworn to before me this __1__ day of February, 2024.

THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

7